UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

NATIONAL ALLIANCE FOR
ACCESSABILITY, INC., etc.,
et al.,

                    Plaintiffs,

v.                                          CASE NO. 8:12-CV-1365-T-17TBM

McDONALD'S CORPORATION,
et al.,

                    Defendants.

_____/

ORDER

This cause is before the Court on:

| | |
|---|---|
| Dkt. 27 | Motion for Summary Judgment (Plaintiffs) |
| Dkt. 35 | Opposition |
| Dkt. 36 | Statement of Disputed Facts in Response to Plaintiff's Motion for Summary Judgment |
| Dkt. 37 | Affidavit |
| Dkt. 38 | Declaration |
| Dkt. 39 | Joinder |
| Dkt. 40 | Motion for Dismissal Under Rule 12(b)(1) or, in the alternative, Motion For Summary Judgment |
| Dkt. 41 | Statement of Undisputed Facts |
| Dkt. 43 | Notice |
| Dkt. 46 | Joinder |
| Dkt. 47 | Response |
| Dkt. 48 | Supplemental Authority |

In the Amended Complaint (Dkt. 5), Plaintiffs National Alliance for Accessability,

Inc. and Denise Payne seek a declaratory judgment that determines that Defendants

McDonald's Corporation and J & J Industries, Inc. were in violation of Title III of the

Americans with Disabilities Act, 42 U.S.C. Sec. 12181 et seq. ("ADA") at the

commencement of this lawsuit, and injunctive relief against Defendants directing

Case No. 8:12-CV-1365-T-17TBM

Defendants to make all readily achievable alterations to the facility, or to make the facility readily accessible to and usable by individuals with disabilities to the extent required by the ADA, including the ADA's Accessibility Guidelines, 28 C.F.R. Part 36 ("ADAAG"), and the Florida Accessability Code ("FAC"). Plaintiffs further seek injunctive relief requiring Defendants to make reasonable modifications in policies, practices or procedures, which modifications are necessary to afford all offered goods, services, facilities, privileges, advantages or accommodations to individuals with disabilities, and to take such steps as necessary to ensure that no individual with a disability is excluded, denied services, segregated, or otherwise treated differently than other individuals because of the absence of auxiliary aids and services. Plaintiffs further seek the award of attorney's fees, costs and litigation expenses pursuant to 42 U.S.C. Sec. 12205.

I. Standard of review

A. Rule 12(b)(1)

Attacks on subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) come in two forms: "facial attacks" and "factual attacks." Facial attacks on the complaint "require[ ] the court merely to look and see if [the] plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true. Lawrence v. Dunbar, 919 F.2d 1525, 1528-29 (11th Cir. 1990). Where a factual attack challenges the existence of subject matter jurisdiction, the Court may consider matters outside the pleadings. The Court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case. No presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims. See Lawrence v. Dunbar, 919 F.2d 1525 (11th Cir. 1990). Where a factual attack implicates an element of the cause of action, the Court should find that jurisdiction exists and deal with the

2

Case No. 8:12-CV-1365-T-17TBM

objection as a direct attack on the merits of plaintiff's case, proceeding under Rule 12(b)(6) or Rule 56.  The exceptions to this rule are narrowly drawn, and are intended to allow jurisdictional dismissals only in those cases where the federal claim is clearly immaterial or insubstantial.  See Williamson v. Tucker, 645 F.2d 404 (5th Cir. 1981) cert. denied, 454 U.S. 897 (1981).


B.  Rule 56


Summary judgment should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).

> The plain language of Rule 56(c) mandates the entry of summary judgment after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."

Celotex Corp. v. Catrett, 477 U.S. 317 (1986).

The appropriate substantive law will guide the determination of which facts are material and which facts are...irrelevant.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant.  See Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115 (11th Cir. 1993).  A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the non-moving party."  See Anderson, 477 U.S. at 248.  But, "[i]f the evidence is merely colorable...or is not significantly probative...summary judgment may be granted."  Id. at 249-50.


The case management report specifies the procedures the parties are required to follow as to dispositive motions.  (Dkt. 21).  The Court advises the parties that future

Case No. 8:12-CV-1365-T-17TBM

noncompliance will result in the automatic denial of dispositive motions.

II.  Statement of Facts

      Plaintiffs have filed a Statement of Material Facts.  (Dkt. 27).   Defendants have filed a Statement of Disputed Facts.  (Dkt. 36).  Both are attached to this Order.

      Plaintiff Denise Payne is an individual who is paralyzed and must use a motorized wheelchair.  Plaintiff Payne has limited upper body strength, and limited use of her hands.  Plaintiff Payne is unable to operate mechanisms that require tight gripping, pinching or twisting of the wrists.  (Dkt. 27-1, p. 1).  On March 22, 2012, Plaintiff Payne stopped at the McDonald's located at 2350 Commercial Way, Spring Hill, FL.   Plaintiff Payne encountered the following barriers at that time: 1) disabled use spaces that did not have clear and level access aisles and interior spaces without proper signage; and 2) the Restrooms lacked required disabled use elements in that there were improper toilet stalls, grab bars and toilets, a lack of clear floor space, and exposed pipes.  (Dkt. 27-1, p. 3).

      The Report of Gene Mattera (Dkt. 27-2) was prepared following a compliance inspection conducted on January 17, 2013.  Authorities attached to the Report include: 28 CFR 26.211, 28 CFR 36.304, 28 CFR 36.401, 28 CFR 36.402, 28 CFR 36.403 and 28 CFR Pt. 36, App. D, 1991 Standards for Accessible Design.  The Report states that barriers to access exist as follows: 1) the exterior accessible route at McDonald's is impeded by running slopes and cross slopes, violating Sections of the ADAAG; parking provided is located on slopes beyond limits and leads to curb ramps, with running slopes beyond limits, violating Sections of the ADAAG; 2) There is not a continuous accessible route connecting all elements of McDonald's and new curb ramps are required by ADA accessibility standards; 3) Restrooms lack proper stalls, grab bars and water closets; dispensers in the Restrooms are mounted beyond reach in violation of

4

Case No. 8:12-CV-1365-T-17TBM

the ADAAG.

Defendants have filed the Declaration of Jeffery Gross (Dkt. 38), who received and reviewed the inspection report of Gene Mattera, and performed a site inspection on April 15, 2013. The Report documents the modifications that Defendants have made as to parking, exterior accessible routes, and restrooms, to bring the subject property into compliance with the ADA and applicable standards. The Report specifies that: 1) the accessible parking spaces have been relocated to a location closest to the main entrance of the restaurant; asphalt paving for three accessible parking spaces and accessible access aisles has been resurfaced for a slope in all directions of 1:48 (2%) or less; three signs noting that the accessible parking spaces are reserved for the disabled have been installed; the signs include the fine for parking in the spaces without required identification and are mounted more than 60 inches above the ground; the three accessible parking spaces are to be striped, 12 feet wide, outlined in blue, with two five foot wide diagonally striped access aisles in accordance with the 2010 Standards. (As of the inspection date, the striping had been delayed due to weather conditions of rain and tornado warning.)

As to the exterior accessible route, three curb ramps and the sidewalk have been modified; the exterior accessible route now has a cross slope of 1:48 (2%) or less and a running slope of 1:12 (8.333%), as required by the 2010 standards; the curb ramp connecting the exterior accessible route at McDonald's has been modified and now has a cross slope of 1:48 (2%) or less and a running slope of 1:12 (8.333%) or less, as required by the 2010 Standards.

As to the Restrooms, the water closets have been modified to be between 16 and 18 inches from the side wall to the centerline, as required by 2010 Standards; the stalls in the men's and women's rooms at McDonald's have been modified in that one of the two existing toilet stalls from each toilet room has been removed, to provide

5

Case No. 8:12-CV-1365-T-17TBM

adequate maneuvering space; the rear grab bars are 36 inches long, the side grab bars
are 42 inches long starting 12 inches from the rear walls; the gripping top surfaces of
the grab bars are between 33 to 36 inches above the floor.   The stalls now contain the
grab bars and required maneuvering spaces of the 2010 standards.   The pipes
underneath the lavatories in the men's and women's rooms have been covered in
accordance with the 2010 Standards.

III. Discussion

A. Dkt. 40  Motion to Dismiss

Defendants move for dismissal of all claims brought by Plaintiffs on the ground
that Plaintiffs' claims have become moot.

Plaintiffs respond that Plaintiffs' claims are not moot.

1. Mootness

Mootness is one aspect of justiciability.  As the Eleventh Circuit has explained:

> "The doctrine of mootness derives directly from the case-or-controversy
> limitation because "an action that is moot cannot be characterized as an
> active case or controversy." Adler v. Duval Cty. School Board, 112 F.3d
> 1475, 1477 (11th Cir. 1997).  "[A] case is moot when the issues presented
> are no longer 'live' or the parties lack a  legally cognizable interest in the
> outcome." Powell v. McCormack, 395 U.S. 486, 496 (1969)...."Put
> another way, 'a case is moot when it no longer presents a live controversy
> with respect to which the court can give meaningful relief.' " Florida Ass'n
> of Rehab. Facilities, Inc. v. Florida Dept. of Health and Rehab. Servs., 225
> F.3d 1208, 1216–17 (11th Cir. 2000) (quoting Ethredge v. Hail, 996 F.2d
> 1173, 1175 (11th Cir. 1993)).  If events that occur subsequent to the filing
> of a lawsuit or an appeal deprive the court of the ability to give the plaintiff
> or appellant meaningful relief, then the case is moot and must be

6

Case No. 8:12-CV-1365-T-17TBM

> dismissed. See, e.g. Hall v. Bealls, 396 U.S. 45, 48 (1969) (per curiam).
> [D]ismissal is required because mootness is jurisdictional.   See Florida
> Ass'n of Rehab Facilities, 225 F.3d at 1227 n. 14 (citing North Carolina v.
> Rice, 404 U.S. 244, 246 (1971) ("The question of mootness is ... one
> which a federal court must resolve before it assumes jurisdiction.")). "Any
> decision on the merits of a moot case or issue would be an impermissible
> advisory opinion." id. at 1217 (citing Hall, 396 U.S. at 48.)."

See Al Najjar v. Ashcroft, 273 F.3d 1330, 1335 -1336 (11th Cir. 2001)


> The United States Supreme Court further explains that:


> "A defendant's voluntary cessation of a challenged practice ordinarily does
> not deprive a federal court of its power to determine the legality of the
> practice.   City of Mesquite v. Aladdin's Castle, Inc., 455 U.S. 283, 289
> (1982).   If it did, courts would be compelled to leave the defendant free to
> return to its old ways....[T]he standard for determining whether a case has
> been mooted by the defendant's voluntary conduct is stringent: A case
> might become moot if subsequent events make it absolutely clear that the
> allegedly wrongful behavior could not reasonably be expected to recur.
> United States v. Concentrated Phosphate Export Ass'n, 393 U.S. 199,
> 203 (1968).   The heavy burden of persuading the court that the
> challenged conduct cannot reasonably be expected to recur lies with the
> party asserting mootness. Ibid.

See Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc., 528 U.S.
167, 169-170 (2000).


The Court notes that this case was filed on June 20, 2012.   At that time the

subject property was an existing facility alleged to be noncompliant with the ADA and

the ADAAG.   The Department of Justice issued its final rule as to Nondiscrimination on

the Basis of Disability by Public Accommodations and in Commercial Facilities on

September 15, 2010, with an effective date of March 15, 2011, see 75 FR 56236-01,

2010 WL 3561890 (F.R.).   The Court notes that the 2010 ADA Standards for

Accessible Design ("Accessibility Standards") consist of the 2004 ADAAG and the

requirements of subpart D of 28 C.F.R. Part 36 (Secs. 36.401-36.406).   See 28 C.F.R.

Case No. 8:12-CV-1365-T-17TBM

Sec. 36.104, effective March 15, 2011.  As to the removal of architectural barriers, the Court also notes that the current version of 28 C.F.R. Sec. 36.304  became effective May 21, 2012; different versions of 28 C.F.R. Sec. 36.304 were in effect until March 15, 2011, and from March 15, 2011 to May 20, 2012.   All versions provide for removal of architectural barriers where such removal is readily achievable, and, if alterations are made after March 15, 2012, for compliance with the 2010 Standards.  See also 28 CFR 36.406.

   28 C.F.R. Sec. 36.304 provides, in part:

   (a) General. A public accommodation shall remove architectural barriers in existing facilities, including communication barriers that are structural in nature, where such removal is readily achievable, i.e., easily accomplishable and able to be carried out without much difficulty or expense.

   .......

   (d) Relationship to alterations requirements of subpart D of this part.

   (1) Except as provided in paragraph (d)(3) of this section, measures taken to comply with the barrier removal requirements of this section shall comply with the applicable requirements for alterations in § 36.402 and §§ 36.404 through 36.406 of this part for the element being altered. The path of travel requirements of § 36.403 shall not apply to measures taken solely to comply with the barrier removal requirements of this section.

   .......

   (B) On or after March 15, 2012, elements in existing facilities that do not comply with the corresponding technical and scoping specifications for those elements in the 1991

8

Case No. 8:12-CV-1365-T-17TBM

> Standards must be modified to the extent readily achievable
> to comply with the requirements set forth in the 2010
> Standards. Noncomplying newly constructed and altered
> elements may also be subject to the requirements of §
> 36.406(a)(5).

28 C.F.R. Sec. 36.304(c) urges a public accommodation to prioritize barrier removal requirements as follows: 1) measures to provide access to a public accommodation from public sidewalks, parking, or public transportation; 2) measures to provide access to a public accommodation where goods or services are made available to the public; 3) measures to provide access to restroom facilities; 4) any other measures necessary to provide access.

When the subject property was inspected by Gene Mattera, Plaintiffs' expert, on January 17, 2013, no alterations had been made to the property.  The property was an "existing facility."  Gene Mattera reinspected the property on April 15, 2013.  By that time, alterations to bring the property into compliance with the Accessibility Standards (except for striping) were completed.  (Dkt. 37).

All of architectural barriers to Plaintiffs' access to the subject property have been removed, bringing the subject property into compliance with the ADA and the 2010 Accessibility Standards, and Defendants have adopted a detailed internal policy as to accessibility.  There is no court order in place which required Defendants to remove the various architectural barriers, and to adopt an internal policy as to accessibility.  It is undisputed that Defendants voluntarily acted to bring the subject property into compliance after this case was filed, and the various architectural barriers and other alleged violations in the Complaint were brought to the forefront. (Dkt. 37).  In a voluntary cessation case, the Court must consider, at a minimum,  the following factors: (1) whether the challenged conduct was isolated or unintentional, as opposed to a continuing and deliberate practice; (2) whether the defendant's cessation of the

Case No. 8:12-CV-1365-T-17TBM

offending conduct was motivated by a genuine change of heart or timed to anticipate suit; and (3) whether, in ceasing the conduct, the defendant has acknowledged liability. Sheely v. MRI Radiology Network, P.A., 505 F.3d 1173, 1184 (11th Cir. 2007).

Defendants contend that Defendants received no accessibility complaints prior to June 20, 2012, and, after this lawsuit was filed, Defendants hired a consultant to evaluate accessibility issues.  Defendants have altered parking accessibility, reconfigured restrooms, and adopted and posted a policy on maintaining accessibility for disabled restaurant customers.  (Dkt. 37).

The Court notes that Plaintiff Payne encountered architectural barriers at the subject property on March 22, 2012, a short time after compliance with the 2010 Standards in the event of alteration became mandatory.   The Court infers that, at the time that suit was filed, Defendants had parking spaces that were designated for the disabled, but the parking spaces did not comply with current Accessibility Standards. The Court infers that the other architectural barriers to Plaintiff's access did not comply with the prior Standards.

There is nothing within the current record that establishes that Defendants' noncompliance involved a subjective intent to discriminate against the disabled. However, the Court also notes that the ADA was initially enacted to eliminate the effects of "benign neglect," "apathy" and "indifference" rather than intentional discrimination against the disabled.  See Helen L. v. DiDario, 46 F.3d 325, 334 (3d Cir. 1995) (citing Alexander v. Choate, 469 U.S. 287, 295 (1985)).   Any entity which operates a place of public accommodation, as defined in the applicable regulations, is subject to the ADA and the Accessibility Standards, 28 C.F.R. Part 36.  The duty to comply is a continuing duty.   The absence of complaints by disabled individuals does not completely explain Defendants' non-compliance with the ongoing requirements of the ADA.   At this point any such entity has had a substantial opportunity to familiarize itself with the provisions

10

Case No. 8:12-CV-1365-T-17TBM

of the ADA, as they evolve, and to comply with those provisions.   The "why and how"
as to the presence of ADA violations remains unclear to the Court.  Based on the
limited record, the Court finds that the challenged conduct falls into the category of
ongoing indifference rather than evincing a deliberate intent to discriminate.

The record is devoid of any evidence that Defendants acted to comply with the
Accessibility Standards before suit was filed.  Given that Defendants' cessation of the
alleged violations took place only after suit was filed, the Court finds that Defendants'
compliance is more closely related a desire to short-circuit litigation than to a genuine
change of heart.

Defendants have denied that they intentionally failed to comply with the ADA or
ADAAG.  (Dkt. 11).  In the Answer, filed August 17, 2012,  Defendants stated that to the
extent any noncompliance is found by the expert Defendants engaged after suit was
filed, Defendants will bring the property into compliance to the extent that it is readily
achievable.  Defendants have not admitted liability for intentional noncompliance with
the ADA or ADAAG.   In his Affidavit of April 22, 2013, Josh David, Vice President of
J&J Industries, Inc., lessor and operator of the subject property, states that he is aware
of the ADA's accessibility requirements and "[has] done [his] best to maintain the
physical environment at the Restaurant in an accessible condition.  [He] will remain
vigilant to repair and correct any issues that may develop in the future."  (Dkt. 37, p. 2).

Defendants' denial of intentional noncompliance with the requirements of the
ADA is unavailing, because the ADA is intended to remedy discrimination that occurs
as a result of passive indifference.  Defendants' implementation of a new policy and the
removal of architectural barriers does not eliminate the possibility of future violations,
when the requirements of the ADA have been well publicized for many years.  The
requirements of the ADA have not remained fixed, and it is incumbent on Defendants to
take note of the ADA's evolving requirements.   In this case, Defendants took no action

11

Case No. 8:12-CV-1365-T-17TBM

to comply with current requirements until after this case was filed.   The risk remains
that Defendants will resume the challenged conduct after this case is dismissed.   In
Sheely v. MRI Radiology Network, P.A., 505 F.3d 1173, 1184 (11th Cir. 2007), the
Eleventh Circuit Court of Appeals notes:

> A defendant's assertion that it has no intention of reinstating the
> challenged practice "does not suffice to make a case moot" and is but
> "one of the factors to be considered in determining the appropriateness of
> granting an injunction against the now-discontinued acts." U.S. v. W.T.
> Grant Co., 345 U.S. 629, 633 (1953).  Although government actors
> receive the benefit of a rebuttable presumption that the offending behavior
> will not recur, private citizens are not entitled to this legal presumption.
> Troiano v. Supervisor of Elections in Palm Beach County, Florida, 382
> F.3d 1276, 1283 (11th Cir. 2004).

While some aspects of this case may have become moot, the Court finds that, at
a minimum, the scope of an injunction directed to maintenance and future compliance
remains at issue.  After consideration, the Court denies Defendant's Motion to Dismiss
under Rule 12(b)(1).

B.  Dkt. 27  Plaintiffs' Motion for Summary Judgment

Plaintiffs move for entry of summary judgment against Defendants as a matter of
law.

Defendants respond that Plaintiff's Motion should be denied because: 1)
Plaintiffs failed to show that Plaintiffs have standing to address the alleged barriers to
access; 2) that Plaintiffs encountered the barriers to access contained in Plaintiffs'
expert report; and 3) Plaintiffs' Motion is based on the state of the property on January
17, 2013, the date Plaintiffs' expert inspected the property.  Defendants dispute
Plaintiffs' Motion and expert report, and argue that the property is now in full

12

Case No. 8:12-CV-1365-T-17TBM

compliance with the ADA.

The Court notes that Plaintiffs dispute whether the property is currently in full compliance.

1.   Standing

Plaintiff Payne is pursuing an individual claim, and a claim as a "tester" on behalf of the National Alliance for Accessability.

Article III standing is determined as of the time a complaint is filed.  Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S. 167, 180 (2000).  Standing does not have to be maintained throughout all stages of the litigation.

Plaintiff Payne must satisfy three requirements to have Article III standing: 1) "injury-in-fact"; 2) "a causal connection between the asserted injury-in-fact and the challenged action of the defendant"; and 3) "that the injury will be redressed by a favorable decision." Shotz v. Cates, 256 F.3d 1077, 1081 (11th Cir. 2001)(internal quotation marks omitted).    Since Plaintiffs seek injunctive relief, in addition to past injury, Plaintiffs "must show a sufficient likelihood that [they] will be affected by the allegedly unlawful conduct in the future." Wooden v. Bd. of Regents of Univ. Sys. of Ga., 247 F.3d 1262, 1284 (11th Cir. 2001).

It is undisputed that Plaintiff Payne visited the property on March 22, 2012. Plaintiff Payne states that Plaintiff encountered ADA violations which served as barriers and discriminated against Plaintiff on that day.  In the Amended Complaint, Plaintiffs allege:

13

Case No. 8:12-CV-1365-T-17TBM

> Ms. Payne has attempted to, and to the extent possible,
> accessed the property, but could not do so because of her
> disability due to the physical barriers to access, dangerous
> conditions, and ADA violations that exist at the property that
> preclude or limit [her] access to the property or to the goods,
> services, facilities, privileges, advantages, or
> accommodations offered at the property, including those
> barriers, conditions, and ADA violations more specifically set
> forth in this complaint.

(Dkt. 5, p. 5).

In her Declaration, Plaintiff Payne states that:

> The barriers I encountered at the property included disabled
> use spaces that did not have clear and level access aisles
> and interior spaces without proper signage.  Restroom
> lacked required disabled use elements; there were improper
> toilet stalls, grab bars and toilets.  There were exposed pipes
> and a lack of clear floor space.

(Dkt. 27-1, p. 3).

Plaintiff Payne's Declaration  states that Plaintiff would return to the property:

> "I would return to the property if I were able to access the
> property safely, have accessible restrooms, and be able to
> avail myself of the restaurant's other facilities, without being
> discriminated against and segregated from the able bodied
> public....."

(Dkt. 27-1, p. 3).  Plaintiff Payne further states that if a lawsuit is filed to bring a facility
into compliance, she subsequently revisits each property to ascertain whether the ADA
violations have been fixed.  (Dkt. 27-1, p. 3).

The Court has looked for a deposition of Plaintiff Payne that would explain what
took place during Plaintiff's visit to the subject property, such as testimony as to the

14

Case No. 8:12-CV-1365-T-17TBM

architectural barriers Plaintiff Payne encountered and how those barriers limited
Plaintiff's access.  The factual record is limited to Plaintiff Payne's Declaration.  The
allegations of the Amended Complaint and Plaintiff's Declaration are sufficient to
establish Plaintiff's standing at the inception of this lawsuit.    Plaintiff Payne has
standing to seek declaratory and injunctive relief for the violations that affected her
disability, and that she personally encountered or about which she had actual notice.
Access Now, Inc. v. South Florida Stadium Corp., 161 F.Supp.2d 1357 (S.D. Fla. Sept.
10, 2001).  The Court remains concerned as to the presence of an adequate factual
record to support the Court's exercise of jurisdiction.

While the subject property did present architectural barriers which limited
Plaintiff's access to the subject property at the time that suit was filed, Defendants
subsequently made alterations to the property to bring it into compliance.   Defendants
further adopted a detailed internal policy as to accessability.  If the property is currently
in full compliance, a fact which Plaintiffs dispute, then to the extent that Plaintiffs seek
an injunction requiring Defendants to make all readily achievable alterations to the
facility, or to make the facility readily accessible to and usable by individuals with
disabilities to the extent required by the ADA and FAC, and to require Defendants to
make such modifications in policies, practices and procedures, when necessary to
afford all offered goods, services facilities, privileges, advantages or accommodations
to individuals with disabilities, no further relief is available to Plaintiffs.  The past injury is
no longer an injury that could be redressed by the Court's decision.  If in fact the
property is in full compliance at this time, if Plaintiffs returned to the property in the near
future, Plaintiffs would not encounter architectural barriers to access.  Plaintiffs' request
for an injunction as to the above issues may have become moot, but that does not
change the fact that Plaintiffs had standing at the time the complaint was filed.

Case No. 8:12-CV-1365-T-17TBM

2. The Merits

For a plaintiff to establish a prima facie case under Title III of the ADA, a plaintiff must establish that: 1) plaintiff is disabled; 2) defendant is a place of public accommodation, and 3) plaintiff was denied full and equal enjoyment provided by the public accommodation because of her disability.  In this case, because Plaintiffs allege discrimination due to an architectural barrier, Plaintiffs must further establish that the existing facility presents an architectural barrier that is prohibited under the ADA, the removal of which is readily achievable.  Plaintiff Payne specifically identified the architectural barriers which denied Plaintiff the full and equal enjoyment provided by the public accommodation because of Plaintiff's disability.

It is undisputed that Plaintiff Payne is disabled.  It is further undisputed that Defendant is a place of public accommodation. See 42 U.S.C. 12181(7)(b).  The Court has noted that Plaintiff Payne's statements as to the barriers to access that Plaintiff encountered are sufficient to maintain the claim, but the record is unclear as to how Plaintiff Payne was denied full and equal enjoyment of the facility due to her disability. Because the architectural barriers identified by Plaintiffs have already been removed to bring the property into compliance, the  Court infers that barriers were present, and their removal was readily achievable.  Plaintiffs dispute whether the property is currently in full compliance.

Relief against prospective harm is afforded by way of an injunction, the scope of which is limited by the scope of the threatened injury.   The scope of the threatened injury has changed since the inception of this lawsuit. In this case,  the removal of architectural barriers to access involved paving and concrete ramps, removing plumbing fixtures, installing grab bars and covering pipes. (Dkt. 38). These modifications are not likely to become noncompliant.   Defendants also adopted a detailed internal policy as to accessibility.    What remains for determination is whether entry of an injunction is

16

Case No. 8:12-CV-1365-T-17TBM

appropriate, and the scope of the injunction, if any.

The factual record in this case is very thin.  It is not clear to the Court what architectural barriers Plaintiff Payne encountered, whether those barriers limited Plaintiff Payne's access, and how much, if any, Plaintiff's access was limited.  While Defendants contend that Defendants have brought the subject property into full compliance, Plaintiffs dispute that fact.  Further, the Court has no knowledge as to the property's background, such as when the property was constructed, how it is that the ADA violations were present, during what time period, and what corporate policies Defendants maintained during that time.

Because  basic material facts remain unclear and in dispute, the Court denies Plaintiffs' Motion for Summary Judgment.  Accordingly, it is

**ORDERED** that Plaintiffs' Motion for Summary Judgment is **denied** (Dkt. 27), and Defendants' Motion to Dismiss under Rule 12(b)(1) or For Summary Judgment is **denied** (Dkt. 40).

**DONE and ORDERED** in Chambers, in Tampa, Florida on this 6th day of December, 2013.

ELIZABETH A. KOVACHEVICH
United States District Judge

Copies to:
All parties and counsel of record